IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION


DONALD CORLEY                                                                          PLAINTIFF


v.                                    NO. 2:06CV00204 HDY


MICHAEL J. ASTRUE,                                                                     DEFENDANT
Commissioner of the Social
Security Administration


MEMORANDUM OPINION AND ORDER

INTRODUCTION. The record reflects that in December of 2003, plaintiff Donald Corley ("Corley") filed an application for disability insurance benefits pursuant to the provisions of the Social Security Act ("Act"). His application was denied initially and upon reconsideration. He next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In March of 2006, the ALJ issued a ruling adverse to Corley. He appealed the ruling to the Appeals Council where the decision of the ALJ was affirmed. The decision of the ALJ thus became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In October of 2006, Corley commenced this proceeding in which he challenged the final decision of the Commissioner.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012.

THE COMMISSIONER'S FINDINGS. In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is helpful to identify the findings. The record reflects that the Commissioner made findings pursuant to the five step sequential evaluation process.[1] At step one, the Commissioner found that Corley has not worked since "his alleged onset date." See Transcript at 11. At step two, the Commissioner found that Corley is severely impaired as a result of the following medically determinable impairments: "degenerative disc disease of the lumbar spine, status-post fusion surgery, and musculoligamentous lumbar strain/sprain." See Id. At step three, the Commissioner found that Corley does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The Commissioner then examined Corley's residual functional capacity; the Commissioner found it to be as follows:

---

[1] The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work." See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) [citing Bowen v. Yuckert, 482 U.S. 137 (1987)].

> After reviewing the record, the [Commissioner] finds that [Corley] is capable of a wide range of light work. [He] is able to lift up to twenty pounds occasionally and ten pounds frequently, while sitting up to six hours and standing/walking up to six hours in an eight hour day. Additionally, [he] is able to perform work which limits him to occasional climbing, balancing, stooping, kneeling, crouching and crawling and allows for an occasional dropped item.

See Transcript at 14. Given that finding, the Commissioner found at step four that Corley does not retain sufficient residual functional capacity to perform his past work as a maintenance repair worker, materials handler, or delivery and forklift driver. The Commissioner then proceeded to step five.[2] There, the Commissioner found as follows:

> … Born December 24, 1954, [Corley] was 48 years old on his alleged onset date, when he was classified as a younger individual. He became 50 years old on December 24, 2004, when he was classified as an individual closely approaching advanced age. He has an eleventh grade education which is considered limited. [He] has no skills transferable to work at his residual functional capacity.
>
> In response to a hypothetical question that assumed the vocational profile of [Corley], as well as the limitations set out for [him], the vocational expert testified that there were jobs in the national economy which such an individual could perform. Examples of such jobs identified by the vocational expert were security guard, a light, unskilled job … and counter clerk, a light unskilled job … The vocational expert testified that the jobs listed were consistent with the classification in the Dictionary of Occupational Titles.

---

[2] In proceeding to step five, the Commissioner specifically noted the following: "Once the claimant has shown that he is unable to perform his past relevant work, the burden of proof shifts to the Commissioner … to show that significant jobs exist in the regional or national economy which the claimant is capable of performing, given his medically determinable impairments, functional limitations, age, education, and work experience." See Transcript at 14.

-3-

> The vocational expert testified that she had reduced the number of counter clerk positions by half to account for [Corley's] nonexertional limitations. The [Commissioner] accepts the testimony of the vocational expert, finding that there are jobs [Corley] can perform existing in sufficient numbers in the economy.

See Transcript at 14-15. Because the Commissioner found that there are jobs Corley can perform, he was not found disabled within the meaning of the Act.

CORLEY'S ASSERTIONS. Are the Commissioner's findings supported by substantial evidence on the record as a whole? Corley thinks not and advances three reasons why: (1) the Commissioner erred in assessing Corley's residual functional capacity, (2) the Commissioner's finding at step five of the sequential evaluation process was erroneous because his hypothetical question was premised upon the finding at step four that Corley retains sufficient residual functional capacity to perform light work, and (3) the Commissioner's credibility findings were erroneous.

CORLEY'S RESIDUAL FUNCTIONAL CAPACITY. Corley maintains that the Commissioner's residual functional capacity determination was not based on the medical evidence and advances two reasons why. Corley first maintains that the findings as to his residual functional capacity are "similar to the report[s] of the non-examining, non-treating agency consulting physicians," see Document 9 at 15, reports the Commissioner believed to be consistent with the opinions of Corley's neurologists. Corley maintains, however, that "the neurologists who examined [him] never commented on [his] work related abilities." See Id.

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004) [citing 20 C.F.R. 404.1545(a)(1)]. The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace." See Id. at 539 [citing Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003)].

With regard to Corley's residual functional capacity, the Commissioner found the medical evidence to be in conflict. Specifically, the Commissioner found as follows:

> [Corley's] general physician opined that [Corley] was disabled. ... Aside from the fact that the issue of disability is a legal decision and outside the venue of the physician pursuant to Social Security Ruling 96-5p, the opinion is inconsistent with that of both neurologists because of their specialized knowledge. ... Thus, it is given reduced weight.
>
> Dr. Cathey [one of the neurologists] opined that [Corley] would need to return to work or find another type of work, but did not indicate there was anything keeping him from working. ... Dr. Moore [the second neurologists] opined that [Corley] had limitations equivalent to 12 percent permanent impairment. ... Based upon the clinical findings of reduced range of motion in the spine, [Corley] would have reduced ability to crouch, crawl, kneel, bend and stoop more than occasionally. Also, he would be unable to perform heavy work because of the strain on his back.
>
> The physicians at Disability Determination Services ... opined ... after reviewing the medical records that [Corley] was capable of a wide range of light work. This is generally consistent with the opinion[s] of the neurologists considering their findings.

See Transcript at 13-14.

Corley appears to be correct in three respects. First, the Commissioner relied upon the consulting physicians in determining what Corley can do despite his limitations. Second, the consulting physicians relied upon the findings of two neurologists, Dr. Steven Cathey ("Cathey") and Dr. Jim Moore ("Moore"), in determining what Corley can do despite his limitations. Last, the neurologists never specifically commented on his work-related abilities. It does not follow, however, that the Commissioner's residual functional capacity determination was not based on the medical evidence.

Save the consulting physicians' findings, the record contains few specific findings as to what Corley can do despite his limitations. He relies upon the opinion of Dr. C.E. Ransom, Jr. ("Ransom"), who opined that Corley is "totally and permanently disabled to hold gainful employment." See Transcript at 128. Ransom fails, however, to offer specific findings supporting his opinion or specifically identify what Corley can do despite his limitations. Although the opinions of Cathey and Moore do not specifically identify what Corley can do despite his limitations, their opinions are supported by specific findings. It was not error for the consulting physicians to rely upon Cathey and Moore's findings, and the Commissioner could rely upon the findings of the consulting physicians.[3]

---

[3] Corley cites the Court to Nevland v. Apfel, 204 F.3d 853 (8th Cir. 2000), a decision in which the Court of Appeals reversed the Commissioner's final decision because he relied upon the opinions of non-examining, non-treating physicians in determining the claimant's residual functional capacity. Nevland, however, "addressed the evidence necessary to satisfy [the Commissioner's] burden of proof at step five [of the sequential evaluation process]; Nevland does not preclude the [Commissioner's] reliance on a reviewing physician's report at step four when the burden is on the claimant to establish an inability to do past relevant work." See Casey v. Astrue, 503 F.3d 687, 697 (8th Cir. 2007) [citing Eichelberger v. Barnhart, 390 F.3d 584 (8th Cir. 2004)].

Corley advances a second reason why the Commissioner's residual functional capacity determination was not based on the medical evidence, that being, the Commissioner improperly discounted Ransom's opinion of Corley's medical condition. Corley maintains that he saw Ransom frequently and that Ransom was in a better position to know Corley's limitations than any other physician. In addition, Corley notes that no physician has ever doubted that he is in pain.

The Commissioner found that Ransom's opinion of Corley's medical condition conflicted with the opinions of Cathey and Moore. Because they possessed "specialized knowledge," the Commissioner gave greater weight to their opinions and, in turn, gave reduced weight to the opinion offered by Ransom. Substantial evidence on the record as a whole supports the Commissioner's decision to do so.

At the outset, the Commissioner could properly find that Ransom's opinion of Corley's medical condition was in conflict with the opinions offered by Cathey and Moore. Ransom opined in February of 2004 that Corley was "totally and permanently disabled to hold gainful employment." See Transcript at 128. In May of 2004, though, Cathey, who had previously assigned Corley a twelve percent permanent partial disability rating for his back condition, opined that Corley's neurological examination was normal and "an MRI scan ... show[ed] no new structural abnormalities in his lower back beyond the previous fusion." See Transcript at 119. In March of 2005, Moore opined the following with regard to Corley's medical condition:

> I do not believe there is any relationship with [Corley's] current difficulties to the 1999 injury but would be related to the August, 2003 injury primarily musculoligamentous sprain and strain. The MRI shows evidence of post-op scarring but no evidence of any diskal component either in the area of surgery or anywhere else along the lumbar spinal axis. I think [Corley] likely would benefit from the use of a TENS unit perhaps even Lidoderm patches. I do not see anything on examination today that would suggest an additional assessment of permanent impairment beyond the 12% assessed in, I believe, 2000.

See Transcript at 150. The only real question for the Court is whether the Commissioner assigned the proper weight to the conflicting opinions.

The weight given a treating physician's opinion is clear. In Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006), the Court of Appeals articulated that weight as follows:

> A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir.2005). We will uphold [the Commissioner's] decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 …

The deference generally accorded a treating physician's opinion is premised, at least in part, on the idea that "'the treating physician is usually more familiar with a claimant's medical condition than are other physicians …'" See Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991) [quoting Schisler v. Heckler, 787 F.2d 76, 81 (2nd Cir. 1986).

In applying the foregoing to the conflicting opinions offered by Ransom, Cathey, and Moore, the Court notes that it is possible to characterize both Ransom and Cathey as Corley's treating physicians.  Ransom saw Corley on a number of occasions between October of 2002 and September of 2005.  Although Moore apparently saw Corley only once, Cathey saw Corley on several occasions between February of 1999 and May of 2004.  Given this characterization of both Ransom and Cathey as Corley's treating physicians, it was for the Commissioner to assign the greater weight to whichever opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the record.  The Commissioner assigned the greater weight to Cathey's opinion, particularly because of his "specialized knowledge."  The Commissioner could properly do so because Cathey's opinion was consistent with the other medical evidence in the record.

Alternatively, for purposes of this Memorandum Opinion and Order, the Court adopts Corley's apparent characterization of Ransom as his only treating physician.  Did the Commissioner err in giving Ransom's opinion reduced weight and in placing greater weight on Cathey and Moore's opinions?  The Court thinks not.  First, Ransom did not offer specific findings supporting his opinion; instead, it is conclusory.  Second, his opinion was inconsistent with the other medical evidence in the record, specifically, the findings made by Cathey and Moore.  Last, Ransom does not have the "specialized knowledge" possessed by Cathey and Moore.

Given the foregoing, the Court finds that the Commissioner's residual functional capacity determination is supported by substantial evidence on the record as a whole. It was not error for the consulting physicians to rely upon Cathey and Moore's findings in identifying what Corley can do despite his limitations, and the Commissioner could rely upon the findings of the consulting physicians. In addition, the Commissioner could properly give Ransom's opinion reduced weight and place greater weight on the opinions offered by Cathey and Moore.

THE COMMISSIONER'S HYPOTHETICAL QUESTION. Corley next maintains that the Commissioner's finding at step five of the sequential evaluation process was erroneous. Corley maintains that it was erroneous because the Commissioner's hypothetical question was premised upon the finding at step four that Corley retains sufficient residual functional capacity to perform light work.

An exhaustive analysis of Corley's assertion is not necessary. As the Court found above, substantial evidence on the record as a whole supports the Commissioner's finding that Corley retains sufficient residual functional capacity to perform light work. For that reason, the Commissioner did not err in incorporating the finding into his hypothetical question.[4]

---

[4]

"Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." See Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996). The question must capture the "concrete consequences of the claimant's deficiencies," see Id. at 297, including the degree to which he can perform work.

THE COMMISSIONER'S CREDIBILITY FINDINGS. Corley additionally maintains that the Commissioner's credibility findings were not based on substantial evidence on the record as a whole. Corley specifically maintains the following: "The [Commissioner] discounted [Corley's] testimony with respect to his limitations. Yet, the [Commissioner] acknowledged that he believed some parts of [Corley's] testimony were credible. Overall, the [Commissioner] should have credited all of ... Corley's testimony ..." See Document 9 at 20. Corley supports the foregoing by noting that he has an excellent work record, that he has a good work ethic; that no physician has ever doubted Corley's pain, and that he has been given pain medication.

It is black letter law that in determining a claimant's residual functional capacity, the Commissioner must consider the claimant's credibility. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The claimant's credibility is critical in correctly evaluating his subjective complaints, complaints that must be considered in light of the teachings of Polaski v. Heckler, 739 F.2d 1329 (8th Cir. 1984).[5]

---

[5]

In Polaski v. Heckler, the Court of Appeals identified five factors the Commissioner is required to consider when analyzing a claimant's subjective complaints of pain; they are as follows: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. The [Commissioner] must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the [claimant's] complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir.2004). However, the [Commissioner] need not explicitly discuss each Polaski factor. Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir.2004). The [Commissioner] only need acknowledge and consider those factors before discounting a claimant's subjective complaints. Id." See Eichelberger v. Barnhart, 390 F.3d at 589-590.

In evaluating Corley's subjective complaints, the Commissioner specifically cited the Polaski v. Heckler factors and then engaged in the following analysis:

> In the present case, [Corley's] medically determinable impairments could reasonably be expected to produce pain and other symptoms. The severity of these symptoms, as alleged by [him], and the effect on [his] ability to work, however, are not fully supported by the objective medical evidence alone. Therefore, other factors must be examined to determine the extent to which [his] symptomatology and related factors will be considered by the [Commissioner] in evaluating [Corley's] allegations of disability.
>
> …
>
> Although [Corley] reported that he had never experienced complete relief of his back pain after surgery, the record indicates that [he] was able to return to work. The objective indicators also reveal that even with his muscular symptoms, he had no skeletal injury threatening his fusion. [His] general physician reportedly found positive straight leg raising but neither neurologist did. … They are the specialists so greater weight is given to their findings, more so because the consistency between their overall examination results is high. Dr. Moore indicated that he did not find any more impairment than he had in 2000. ..
>
> [Corley] has been treated with medication and physical therapy. The physical therapist did note that [Corley] made slow progress right after his injury but [he] reported that his pain was four on a scale of one to ten. … [He] has not reported side effects with his medication other than drowsiness. [He] has not been prescribed a cane but testified that he uses one anyway. It seems reasonable that if any of his physicians believed [he] needed a cane for balance or support he would have been prescribed one.
>
> [Corley] testified that he does not drive often currently but for much of the period he reported that he was able to drive. He was also able to engage in a variety of sedentary activities such as paying bills, attending church, reading and watching television along with some lighter exertional activities such as ironing, taking out the trash and washing dishes. He reported that he did not engage in some light activities such as yard work because they required too much bending. … This is consistent with a lumbar fusion.

> [Corley's] work record is a good one.  His earnings record indicates that [he] returned to work after his fusion surgery and continued to work until his alleged onset date. ...
>
> After considering all the evidence of record, the [Commissioner] finds [Corley's] subjective allegations of pain and limitation as it applies to his complete inability to work not fully credible.  On that basis, the undersigned will give [Corley's] testimony reduced weight as it applies to his ability to perform work.

See Transcript at 12-13.

The Court has carefully reviewed the Commissioner's analysis of Corley's subjective complaints.  Substantial evidence on the record as a whole supports the Commissioner's finding that Corley's subjective complaints are not fully credible and do not preclude him from performing light work.  Specifically, the Commissioner could find that Cathey and Moore's findings and conclusions militate against a finding of disabling pain.  Their opinions are remarkably similar in that they agree that Corley has a permanent partial disability rating of approximately twelve percent.  They also agree that although he experiences some degree of pain, his neurological examinations were normal and there is no evidence of any new structural abnormalities in his lower back beyond the previous fusion.  The Commissioner could also find that Corley's condition improved somewhat with physical therapy and could place some emphasis on his representation that his pain is a four on a scale of one to ten.  In addition, the Commissioner could find that Corley's daily activities are not inconsistent with an ability to perform light work.

CONCLUSION.  In conclusion, substantial evidence on the record as a whole supports the Commissioner's findings, including the findings that Corley retains the residual functional capacity to perform light work and that his subjective complaints are not fully credible.  The Commissioner could therefore find that Corley is not disabled within the meaning of the Act.  The complaint at bar is dismissed, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this __19___ day of February, 2008.

_____
UNITED STATES MAGISTRATE JUDGE